**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GAYLE K.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 23 C 0306** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, four years ago in July 2019. (Administrative Record (R.) 239-45). She claimed that she had been disabled since January 1, 2019 (R. 239) due to: "Blind or low vision, Multiple Sclerosis, HBP/HTN, Anxiety (panic disorder, phobia, self injury), Depression." (R. 290). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. She appealed to the federal district court on January 19, 2023, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on October 20, 2022, and the Executive Committee reassigned the case to me. [Dkt. ##9, 11]. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: "multiple sclerosis; migraine headaches; and osteoporosis." (R. 28). The ALJ said the plaintiff's foraminal stenosis in her cervical spine were not severe impairments. (R. 28-32). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on Listing 11.09 for multiple sclerosis. The ALJ found that the plaintiff had no limitations in understanding, remembering or applying information and in adapting or managing oneself, but had mild limitations in concentrating, persisting or maintaining pace and in interacting with others. (R. 32-38).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following lengthy list of additional limitations:

> Occasionally lift up to 10 pounds; Frequently lift and/or carry up to 5 pounds; Walk and/or stand for about 2 hours total out of an 8-hour workday; Sit for about 6 hours out of an 8-hour workday; and Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to: Postural limitations of: Never climbing ladders, ropes, or scaffolds; Occasionally climbing ramps or stairs; and Occasionally balancing, stooping, crouching, kneeling, or crawling; Manipulative limitations of: Frequent reaching with the bilateral upper extremities; and Frequent handling (gross manipulation) and frequent fingering (fine manipulation) with the bilateral upper extremities; And Environmental limitations of: Avoiding all exposure to dangerous moving machinery and unprotected heights.

(R. 39). The ALJ then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. (R. 40). Along the way, the ALJ noted that although the plaintiff wore a left leg brace due to her foot dragging, her neurologist did not recommend a brace and examinations showed only a mild decrease of strength with dorsiflexion of the left foot and the neurologist, and normal gait. The ALJ also noted a discrepancy where the plaintiff claimed to have fallen when standing up due to her left foot, but the medical records indicated she had tripped on her left foot. (R. 40). Plaintiff's complaints of loss of balance were incongruent with reports of normal gait and no use of an assistive device. Her complaints of joint pain were contradicted by no evidence degenerative or inflammatory arthritis, and no markers indicative of rheumatoid arthritis or other autoimmune disease. The treatment evidence did not present a consistent documentation of pain location, frequency, character, or intensity. (R. 40).

The ALJ then considered the medical opinions in the record. He found the opinions from the state agency reviewing physicians persuasive to the extent that both consultants assessed the plaintiff's ability to perform work was limited by her severe physical impairments. But, the ALJ explained that neither medical consultant had the opportunity to review the complete record that included the plaintiff's testimony and suggested the plaintiff required more restrictive physical limitations they had assessed. (R. 42). The ALJ found the opinions from the state agency reviewing psychologists that the plaintiff did not have a severe medically determinable mental impairment were very persuasive, as each reflected the evidence available to the psychological consultants at their respective levels of review and the opinions were not contradicted by evidence entered into the record at subsequent levels. (R. 42).

The ALJ then relied on the testimony of the vocational expert that the plaintiff could perform her past relevant work of hospital admitting clerk as such work is performed generally. (R. 43). Accordingly, the ALJ concluded that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 43).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from

being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Security.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and "logical bridge" between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly

allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3] As it happens, this case presents a

---

[2] By way of example, in the Seventh Circuit's ruling in *Jarnutowski*, 48 F.4th 769, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she had. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

[3] Prior to Sarchet's "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which

(continued...)

"logical bridge" problem.

## III.

The plaintiff makes a handful of interrelated arguments in favor of remanding the ALJ's decision in this case. The thread begins with the ALJ finding the plaintiff had mild limitations in two areas of functioning, but then seemingly abandoning that finding and including no such limitations in his residual functional capacity finding. As the plaintiff suggests, even mild limitations might be significant when an ALJ finds a plaintiff capable of performing past work with demands that appear to conflict with those limitations. And then there is a matter of the ALJ dismissing a block of evidence as illegible. When all these flaws are combined, we have to agree with the plaintiff that this case has to be remanded for the ALJ to build the required "logical bridge."

As the plaintiff argues, while the ALJ found she had mild limitations in interacting with others and in concentrating, persisting, or maintaining pace, he failed to include any such limitations in his RFC or his hypotheticals to the vocational expert. The Seventh Circuit has stated repeatedly

---

[3](...continued)

must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).

The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

that ALJs must provide vocational experts with a complete picture of a plaintiff's residual functional capacity, and vocational experts must consider deficiencies in areas like concentration, persistence, and pace. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019); *Jelinek*, 662 F.3d at 813; *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). While the ALJ's hypothetical and RFC need only include the physical and mental limitations the ALJ finds supported by "substantial evidence," *See Simila v. Astrue*, 573 F.3d 503, 520–21 (7th Cir.2009); *Schmidt*, 496 F.3d at 846, as the plaintiff pints out, here the ALJ specifically found the record supported mild limitations in interacting with others and in concentrating, persisting, or maintaining pace. Yet, the ALJ made no mention of any such deficiency to the vocational expert and did not include it in his RFC.

And it makes no difference that, having found only mild restrictions, the ALJ determined plaintiff's mental impairment was non-severe. An ALJ has to consider the effects of even non-severe impairments on a plaintiff's overall capacity to work. 42 U.S.C. § 423(d)(2)(B)(". . . the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)(ALJ improperly failed to consider non-severe headaches in combination with plaintiff's other impairments); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). In *DeCamp*, for example, the ALJ found the plaintiff limited to unskilled work with no fast-paced production line or tandem tasks, despite finding the plaintiff had moderate limitations in some areas *and mild* limitations in others. But because the ALJ's hypothetical and RFC "omitted any mention" of those limitations, the court found "[t]he ALJ's analysis . . . flawed with respect to [plaintiff's] mild limitations in understanding, remembering, and carrying out simple instructions and her

moderate limitations in concentration, persistence, and pace. . . ." *DeCamp*, 916 F.3d at 675–76.

Obviously, an ALJ can save everyone a lot of trouble by not going from a finding of a mild restriction to no restriction at all. It makes more sense to pick a "lane" and stay in it. But, as the parties' briefs demonstrate, cases in this district can go either way on whether an ALJ can find a mild restriction in one breath and somehow translate that into no restriction at all in the next breath. But, it's a question of a "logical bridge" which, again, is somewhat subjective. Sometimes a court can follow the ALJ's reasoning from a mild restriction to no restriction. *See, e.g., Tina W. v. Kijakazi*, No. 20 C 6311, 2023 WL 4053818, at *6 (N.D. Ill. June 16, 2023)(affirming the ALJ's decision that the plaintiff had mild mental impairments that did not require limitations in the RFC as supported by "substantial evidence" where the ALJ adequately considered plaintiff's mild mental limitations, but determined, with support of the state agency medical consultant and no contradictory evidence, that those limitations did not support a functional limitation in the RFC); *Michael Z. v. Kijakazi*, No. 20-CV-6857, 2023 WL 3885882, at *11 (N.D. Ill. June 8, 2023)(given the ALJ's discussion of medical records from two doctors, the court found the ALJ had "sufficiently explained her decision not to incorporate any non-exertional limitations into the RFC to account for plaintiff' mild mental impairments"); *Rick M. v. Saul*, No. 20 CV 4369, 2021 WL 2588762, at *5 (N.D. Ill. June 24, 2021)(explaining that while "the ALJ could have been more explicit about why he omitted mental limits from [plaintiff's] RFC," the ALJ was only "required to consider those limitations, not necessarily to include them in his finding of plaintiff's RFC."). Sometimes, it's a bridge too far. *See, e.g., Milton B. v. Kijakazi*, No. 20-CV-5482, 2023 WL 4134812, at *7 (N.D. Ill. June 22, 2023)(remanding where the ALJ failed to mention his finding that [plaintiff] had mild limitations in his ability to understand, remember, or apply information and to concentrate, persist, or maintain

9

pace in his discussion of his RFC assessment" or "provide any explanation as to why he failed to include any non-exertional limitations in the RFC to address [plaintiff's] mild mental limitations."); *Dianne O. v. Kijakazi*, No. 21 C 2348, 2023 WL 3864589, at *4 (N.D. Ill. June 7, 2023)(remanding where "the ALJ determined at step two that Plaintiff had non-severe mental impairments that warranted a mild limitation in adapting or managing herself, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitation in crafting the RFC."); *Brenda R. v. Kijakazi*, No. 20-CV-7498, 2023 WL 3689458, at *6 (N.D. Ill. May 26, 2023)(remanding where "the ALJ made no mention in his RFC assessment of his own findings that [plaintiff] has mild limitations in her ability to concentrate, persist, or maintain pace; interact with others; and adapt and manage herself, nor did he sufficiently explain why he did not include any such limitations. The ALJ's failure to do so is particularly troubling here where the determination of non-disability was based on the ALJ's finding at step four that [plaintiff] had the ability to perform her past skilled work as department manager); *Thomas D. v. Kijakazi*, 605 F. Supp. 3d 1063, 1068 (N.D. Ill. 2022)(remanding where "the ALJ failed to account for the mild functional limitations caused by the mental impairments in forming the RFC" and "failed to explain why the limitations he found credible at step two would not impact [Plaintiff's] ability to work."). In this case, there are at least three factors that tip the scales toward a remand.

First, there is the simple fact that the ALJ made no mention of plaintiff's mild restriction on interacting with others in his RFC discussion and mentioned concentration limitations only in the context of a postural limitation against climbing ladders, ropes, or scaffolds. (R. 41). While it is true, as the Commissioner argues, that the ALJ discussed the medical evidence regarding interaction and concentration in his Step 3 discussion and caselaw does not require ALJs to repeat discussions

10

in the various sections of their opinions, *see, e.g., Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015), it is also true that the ALJ has to, at some point, provide a narrative explanation of how he got from the evidence to his RFC. Social Security Ruling (SSR) 96-8p; *Crowell v. Kijakazi*, No. 22-3097, 2023 WL 4377086, at *1, – F.4th –, – (7th Cir. July 7, 2023); *Jarnutowski*, 48 F.4th 769, 773 (7th Cir. 2022). Here, that evidence the ALJ considered in his Step 3 amounted to mild restrictions on the plaintiff's abilities to concentrate and interact with others. That's not the plaintiff's contention or reviewing the court's interpretation; it's what *the ALJ* thought. So, where did those mild restrictions go? And how is it that those mild restrictions had absolutely no impact on the plaintiff's ability to perform her past work? The ALJ never said.

Without any explanation from the ALJ, the court can't just say that those mild restrictions wouldn't have an impact on plaintiff's ability to do her past work. And that brings us to the second factor that points toward a remand in this case. As the ALJ noted, the plaintiff's past work as a hospital admitting clerk was semi-skilled with an SVP of 4. The Dictionary of Occupational Titles ("DOT") describes the job as involving a lot of interaction: listening and talking to people; being socially perceptive; communicating so that others will understand and comprehending what others say as well; etc. Indeed, the DOT rates "Job-Required Social Interaction" at 93 out of 100 in terms of importance. There also seems to be a need for concentration: documenting, recording, and processing information; reading comprehension; information gathering; etc. DOT #205.362-018; https://occupationalinfo.org/onet/55332.html. Arguably, even a mild restriction in the two areas the ALJ found the plaintiff was limited in would adversely affect the plaintiff's ability to do this kind of work.

The ALJ did say that, because the plaintiff worked part-time, she was able to control her

desire to isolate herself from others, including her own family. (R. 31). But being able to engage in *part-time* work is not the same being able to sustain a *full-time* job that appears to require near constant social interaction. *See Jelinek*, 662 F.3d at 812. The ALJ also said that the plaintiff was able to concentrate during a consultative exam and when driving. But again, those brief periods of concentration aren't the same as doing it for large portions of the day, five days a week. And while the ALJ did not exactly equate part-time work to full-time work, plaintiff's part-time work was not very probative of her controlling her limitations. Indeed, as the plaintiff testified, when she works one five-hour shift, two to three days a week, the next day she is "totally shot" – "mentally and physically exhausted" (R. 58, 63); it is so stressful, she can't interact with her children and spends most of that next day sleeping. (R. 58). She turns down more hours because she is not capable of handling it. (R. 59). She had trouble with memory and concentration during her shifts. (R. 62). As a result, she was taking longer to perform her necessary tasks and was getting poorer performance reviews. (R. 62). As she put it, her employer was "doing the best they [could] with [her] disability." (R. 62). The court's caution in *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017) applies here: "We have cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment," especially when "the claimant's employer is accommodating him."

There is a third factor counseling remand. The ALJ dismissed a block of evidence – reports from the plaintiff's treating psychologist – as "not always fully legible." (R. 30). As a result, he didn't know if mental status exams were performed, but he concluded there was no formal record documenting plaintiff's memory function, thought process, or content after November 2019. (R. 30-31). Unfortunately, it is illogical to assume that medical evidence that you can't read does not detract from your conclusions. To assume that it does not certainly is inconsistent with the

requirement that the Court be able to perceive the "logical bridge" from the evidence to the conclusions. What Magistrate Judge Cummings said recently in a similar situation applies here: "In sum: it is error for an ALJ to deem illegible treatment notes as a 'lack of documentation' without first attempting to contact the physician to 'request legible copies of his notes ... or an explanation of the findings contained therein.'" *Amy H. v. Berryhill*, No. 17 CV 4559, 2019 WL 2076325, at *6 (N.D. Ill. May 10, 2019); *see also Nancy G. v. Kijakazi*, No. 20-CV-4456, 2022 WL 1136575, at *1 (N.D. Ill. Apr. 18, 2022)("The Court cannot meaningfully review the ALJ's decision given the deficiency created in the record by the illegibility of the treatment notes of Plaintiff's primary care physician. Although ALJs have "the flexibility to determine how best to resolve inconsistencies and insufficiencies in the evidence," the ALJ must take some action to resolve this deficiency in the record instead of merely making multiple notations as to the illegibility of Dr. Sarantos's records."); *Koppers v. Colvin*, No. 15 C 5471, 2016 WL 3136916, at *4 (N.D. Ill. June 6, 2016)(remanding for the ALJ to determine if she can obtain a legible copy of the record or assistance in reading the handwritten notes).[4]

---

[4] It has to be said, at least in passing, that it is at least a bit surprising that no one – neither the ALJ, the Commissioner's lawyer, or plaintiff's counsel (who would have had the assistance of the plaintiff herself) – managed to "decipher" the treating psychologist's notes. It is not as though they were irredeemably unfathomable. With some effort and time, this is what the court was able to make of them:

> November 12, 2020 – Pt stated she was struggling w/ acute anxiety, severe to moderately severe depression, + mood instability. Pt talked about not being able to relax. Pt stated mind is racing + she feels overwhelmed by even simple tasks. (R. 1422, 1473).

> November 20, 2020 – Pt talked about her OCD symptoms + about her [] mood which remains irritable. Talked about coping skills and encouraged Pt to reach out to psychiatrist about use of mood stabilizers. Hypothesized that Pt may have a [] of undiagnosed bipolar disorder. (R. 1423, 1472)

> November 24, 2020 – Pt reported that she had scheduled appointment w/ her psychiatrist.

(continued...)

[4](...continued)
Pt talked about interpersonal stressors which have been (-) impacting her. Pt agreed that she is looking forward to thanksgiving weekend. Pt agreed to rest as much as possible. (R. 1424, 1471)

December 4, 2020 – Pt stated that she scheduled appt to her primary care physician who agreed that a mood stabilizer would be a good idea. Based upon reported symptoms + presentation a new diagnosis of Bipolar II Disorder is accurate +needed. (R. 1425, 1470).

December 11, 2020 – Pt reported that new medication is beginning to help but Pt remains very anxious +her mind still has a tendency to race. Pt stated that she takes comfort from her new diagnosis because it explains her depression + mood swings to manic anxiety. (R. 1426, 1469).

December 18, 2020 – Pt reported that her depressive irritable mood has improved but that she is struggling w/ fatigue +frustration about her inability to complete as many chores around the house as she would like to complete. Pt noted that she is sleeping more than normal for past week. (R. 1427, 1468)

January 8, 2021 – Pt reported she was glad she was able to muster enough energy to put up the Christmas tree prior to Christmas. Pt did mention that she had to leave [work?] early last week due to feeling overwhelmed and stressed. (R. 1428, 1467)

January 22, 2021 – Pt missed her scheduled appointment due to fatigue + feeling ill; Pt called and schedule appointment for the following week. (R. 1429, 1466)

April 2, 2021 – pt reported that her mood [] while still [], is [] upsetting/frustrating. Pt stated she is trying to extend more self-compassion to herself. Revisited coping skills +encouraged [] w/ schedule of weekly activities. (R. 1461)

March 5, 2021 – Pt stated that her mood remains depressive. Discussed coping skills that Pt can use to modify her expectations regarding what she is capable of accomplishing each day. (R. 1463)

February 19, 2021– Pt reported that her mood continues to go up and down; Pt stated she usually more depressed + anxious than hypermanic; pt reported she is trying to keep herself to a schedule so that she is [] w/ household chores. (R. 1464).

February 5, 2021– Pt reported that she has been struggling w/ low energy + feeling unmotivated for household chores; Pt talked about feeling guilty about not having more energy or interest to spend time w/ her kids; Pt reported taking medications consistently, but mood swings still occur. (R. 1465).

Again, that's merely the court's interpretation. As it is not the court's place on review to take a first crack at the evidence or reweigh it – or decode it – the best course will be for the ALJ to seek legible notes or an

(continued...)

Of course, none of this is to say that the ALJ's end result was wrong.  It's just that the ALJ's decision leaves too much for the court to fill in – or guess at.  There needed to have been a credible explanation for how two mild limitations became transmogrified into "no limitations." Or, for how the two mild limitations had no effect on the plaintiff's capacity to perform her past semi-skilled work. The ALJ had to have made some attempt to decipher the block of evidence from the plaintiff's treating psychologist.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #15] is denied, and the ALJ's decision is remanded for more proceedings consistent with this opinion.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE: 8/2/23**

---

[4](...continued)
interpretation from the plaintiff's treating psychologist.

15